FILED

2006 Apr-13  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES WIGGINS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 2:04-CV-2626-VEH** |
| | ) | |
| **THE SALVATION ARMY;** | ) | |
| **M.J. RILEY, Captain,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Charles Wiggins ("Mr. Wiggins") has sued The Salvation Army and Captain M.J. Riley ("Defendants") under Title VII claiming race discrimination during the period Mr. Wiggins worked for Defendants as a seasonal bell ringer. Defendants have moved for summary judgment on all counts. This motion has gone unopposed.[1]  For the reasons stated below, Defendants' motion is due to be **GRANTED**.

---

[1]The court recognizes that Mr. Wiggins is a *pro se* plaintiff and that Defendants' motion has not gone unopposed because Mr. Wiggins has no interest refuting same. To that end, the court has considered each aspect of Defendants' motion carefully and has not approached any part of the analysis without due care and consideration.

## Facts

Mr. Wiggins was hired by The Salvation Army to be a bell ringer during the Thanksgiving and Christmas seasons of 2003. *Plaintiff's Complaint* (doc. #1). M.J. Riley was the Captain supervising the bell ringers at that time. *Plaintiff's Complaint* (doc. #1). Mr. Wiggins worked in this capacity on November 26, 28, and 29, 2003. *Defendants' Motion* (doc. #15), p. 3. Mr. Wiggins did not work after November 29, due to illness, until December 16, 2003. *Defendants' Motion* (doc. #15), p. 3. Mr. Wiggins resigned from his position and requested a grievance form on December 17, 2003, claiming unfair treatment on the job. *Plaintiff's Complaint* (doc. #1). Specifically, Mr. Wiggins alleges that he was not paid the same wages as white bell ringers, did not receive any bonuses for his work, and was required to adhere to the dress code where other white bell ringers were not. *See Plaintiff's Complaint* (doc. #1). Mr. Wiggins filed a Charge of Discrimination with the EEOC on February 23, 2004. *Plaintiff's Complaint* (doc. #1). The EEOC closed Mr. Wiggins file and dismissed the charge on June 3, 2004. *Plaintiff's Complaint* (doc. #1).

## Standard of Review

Under *Federal Rules of Civil Procedure* 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or the depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-moving party. *Chapman*, 229 F.3d at 1023, *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted.  *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial.  *Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively

show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a direct verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## <u>Analysis</u>

The court will first address Defendants' argument that Captain M. J. Riley is not a proper defendant to this action. Mr. Riley is an employee of the Salvation Army; he was in charge of the bell ringers for the 2003 season. [M. J. Riley Aff. ¶ 2]. Defendants argue that Title VII suits can only be brought against employers and not

individuals.   Generally, suits against individual employees are considered "inappropriate." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Individual defendants may be sued under Title VII if they are "supervisory employees [working] in their capacity as agents of the employer." *Hinson v. Clinch County, Ga. Bd. of Education*, 231 F.3d 821, 827 (11th Cir. 2000).   However, "[t]hough such a definition might be interpreted to impose liability on individual employees as 'agents,' the Eleventh Circuit has ruled that agents of employers who violated Tivle VII provisions only triger an action against the employer, and not an action against the individual agent." *Marshall v. Miller*, 873 F. Supp. 628, 630 (M.D. Fla. 1995). Furthermore, "'the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly." *Hamm v. Lakeview Community Hospital*, 950 F. Supp. 330, 333 (M.D. Ala. 1996) (quoting *Cross v. Alabama*, 49 F.3d 1490, 1504 (11th Cir. 1995) (additional citation omitted)).   Mr. Riley, himself an employee of the Salvation Army, had supervision of the bell ringers as part of his job description. [M. J. Riley Aff. ¶ 2].   Mr. Wiggins was hired by the Salvation Army, not Mr. Riley, to be a bell ringer. [Cathy Riley Aff. Ex. A].   Mr. Riley's job as supervisor of the bell ringers and an agent of Salvation Army does not qualify him to be sued in an individual capacity under Title VII.   Even if Mr. Riley were a proper party to this

action, however, Mr. Wiggins is not entitled to judgment against him, as discussed below.

Mr. Wiggins claims race-based discrimination based on disparity in pay under Title VII, 42 U.S.C. 2000e *et seq.*  The court is aware that the summary judgment rule applies in job discrimination cases just as in other cases.  *See Chapman*, 229 F.3d at 1025 (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims.  *See Standard*, 161 F.3d at 1330 (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen").  "A plaintiff may establish a claim of illegal disparate treatment through either direct evidence or circumstantial evidence."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1085 (11th Cir. 2004) (citing *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999)). Generally, direct evidence is that which, "'if believed, proves the existence of [a] fact without inference or presumption.'" *Wilson*, 376 F.3d at 1086 (quoting *Burrell v. Bd. of Trustees of Ga. Mil. Coll.*, 125 F.3d 1390, 1393 (11th Cir. 1997)).  There are no allegations of direct evidence in this case, only allegations of circumstantial evidence, or that which can only be supported by inference or presumption.

7

It is not uncommon for a case to be supported only by circumstantial evidence. "In evaluating disparate treatment claims supported by circumstantial evidence, [the courts of this circuit] use the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981)." *Wilson*, 376 F.3d at 1086 (additional citations omitted).

> Under this framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1527-28 (11th Cir. 1997). . . . The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation. *See, e.g., Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1185 (11th Cir. 1984).

*Wilson*, 376 F.3d at 1087.

Once the plaintiff has proven a prima facie case and thereby has created the presumption of discrimination, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions.[2] *See Combs*, 106 F.3d at 1528. The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254-55; *see Chapman*, 229

---

[2]*See Chapman*, 229 F.3d at 1034 (stating that "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion").

F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination is eliminated and the burden of production shifts back to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[3]   Where the defendant articulates multiple reasonable, legitimate, and nondiscriminatory reasons, the plaintiff must rebut each of defendant's proffered reasons.  *See Chapman*, 229 F.3d at 1024-25. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case.  *See Combs*, 106 F.3d at 1528.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253. A plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgment motion either by proving that intentional discrimination motivated the defendant or by producing sufficient evidence to allow a rational trier

_____

[3]If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  *Chapman*, 229 F.3d at 1030.

of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000) (noting that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion).[4]

In the instant case, Mr. Wiggins has no direct evidence of discrimination and relies only on circumstantial evidence.  Mr. Wiggins contends that white bell ringers were paid more than non-white bell ringers, received bonuses, and were allowed to disregard the dress code. *See Plaintiff's Complaint* (doc. #1).  Therefore, under the *McDonnell Douglas* framework, Mr. Wiggins must prove a prima facie case of discrimination.  To do this, he must show four elements: (1) that he is a member of a protected class; (2) the he was qualified for the job; (3) that an adverse employment action was taken against him; and (4) that a similarly situated employee outside of the

---

[4]The court in *Chapman* modified the statement in *Combs* contrary to this holding in *Reeves* after noting that the standard for granting summary judgment mirrors the standard for judgment as a matter of law. *See Chapman*, 229 F.3d at 1025, n.11.

protected class was treated dissimilarly. *See Alexander v. Fulton Co.*, 207 F.3d 1303, 1336 (11th Cir. 2000).

The first element Mr. Wiggins must show is that he is a member of a protected class. Mr. Wiggins, a black male, is part of a recognized protected class (one based on race), and Defendants do not dispute this point. Therefore, the court concludes that Mr. Wiggins meets the first element of his prima facie case.

Second, Mr. Wiggins must demonstrate that he is qualified for the job. The record indicates that the 2003 season was not the first time Mr. Wiggins worked as a bell ringer; he was previously employed by the Salvation Army as a bell ringer in 2001. *Plaintiff's Complaint* (doc. #1); *Defendant's Motion* (doc. #15), p. 2. Defendants do not dispute that Mr. Wiggins was qualified to work as a bell ringer and expressed no hesitation at hiring Mr. Wiggins when he signed the employment paperwork on November 25, 2003. *Defendant's Motion* (doc. #15), Ex. A. Therefore, there is no dispute as to whether Mr. Wiggins was qualified to be a bell ringer.

The next element of the prima facie case looks at whether an adverse employment action was taken against Mr. Wiggins. Generally:

> An adverse employment action is an ultimate employment decision, such as a discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or

11

> privileges of employment, deprives him or her of employment
> opportunities, or adversely affects his or her status as an
> employee."

*Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 578 (11th Cir. 2000) (quoting *Robinson*

*v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).   "To prove adverse

employment action . . . an employee must show a *serious and material* change in the

terms, conditions, or privileges of employment."   *Davis v. Town of Lake Park*, 245

F.3d 1232, 1239 (11th Cir. 2001) (emphasis in original).   However, "[n]ot all conduct

by an employer negatively affecting an employee constitutes adverse employment

action."   *Id.* at 1238.   Rather, the courts "recognize that 'Title VII[ ] is neither a

'general civility code' nor a statute making actionable the 'ordinary tribulations of the

workplace.'"   *Gupta*, 212 F.3d at 587 (quoting *Anderson v. Coors Brewing Co.*, 181

F.3d 1171, 1178 (10th Cir. 1999) (citation omitted)).   Mr. Wiggins must be able to

show that the actions of the Salvation Army materially affected his employment in

order to prevail on this point.

   Mr. Wiggins specifically contends that as a black employee he was paid a

lower wage than white employees and received no bonuses when other employees

did.  *See Plaintiff's Complaint* (doc. #1).   Specifically, Mr. Wiggins alleges that he

received $7.00 per hour in wages instead of $7.50 per hour in wages, the wages he

believe he should have received since he had previously worked as a bell ringer in

2001. *See id.*  Furthermore, over his first three days of bell ringing in 2003, Mr. Wiggins collected over $900.00 in donations, yet he did not receive a bonus for those days.

In response to those allegations, the Salvation Army contends that their actions were not adverse to Mr. Wiggins.  At a meeting for bell ringers held on November 23, 2003, "the hourly rate difference was explained to all bell ringers present." [M. J. Riley Aff. ¶ 2].  Mr. Wiggins was paid at the $7.00 per hour rate "which was the hourly rate paid to all bell ringers who did not work in 2002. [Mr. Wiggins] had worked as a bell ringer in 2001 but not in 2002." [M. J. Riley Aff. ¶ 3].  Furthermore, it was explained to Mr. Wiggins that "only those who had worked in 2002 would be paid $7.50 an hour, and since [Mr. Wiggins] did not work that year, he [was to] be paid $7.00 an hour like everyone else that did not work in 2002." [Cathy Riley Aff. ¶ 5].

At a November 12, 2003, meeting, the new system of bonuses for the bell ringers was explained. [M. J. Riley Aff. ¶ 8].  As of November 12, 2003, there were going to be no bonuses paid to bell ringers for the 2003 season. [M. J. Riley Aff. ¶ 8].  On December 8, 2003, the Salvation Army changed their bonus policy for 2003, allowing that "if a bell ringer raised $250.00 or more [in a day], that bell ringer would be eligible for a bonus." [M. J. Riley Aff. ¶ 8].  Mr. Wiggins only worked four days

13

during the 2003 season; he initially worked November 26, 28, and 29, 2003, when the initial no-bonus policy was in place. [M. J. Riley Aff. ¶ 6]. Mr. Wiggins next worked as a bell ringer on December 16, 2003, when the bonus policy was in place. [M. J. Riley Aff. ¶ 7]. Mr. Wiggins only raised $227.80 on December 16, which was not enough money to qualify for a bonus. [M. J. Riley Aff. ¶ 7, 9].

The affidavit of M.J. Riley includes evidence that the wages paid and bonuses received by bell ringers during the 2003 season were not based on race. Of the thirty-eight bell ringers hired, only twelve employees received $7.50 per hour. [M. J. Riley Aff., Ex. A]. Of the twelve employees receiving higher wages, eight are black and one is hispanic. [M. J. Riley Aff., Ex. A]. The employees who received these wages did so because they had worked for the Salvation Army during the 2002 season and not because they are white. Similarly, Mr. Riley's affidavit demonstrates that the black and hispanic employees frequently received bonuses for collecting at least $250.00 in a day's bell ringing. [M. J. Riley Aff., Ex. B]. In fact, only three white employees are shown to have received bonuses during the 2003 season between December 8 (the first date bonuses were given) and December 24, 2003. [M. J. Riley Aff., Ex. B].

Mr. Wiggins's only other specific allegation is that white employees were allowed to disregard the bell ringer's dress code. *See Plaintiff's Complaint* (doc. #1).

14

Mr. Wiggins never states that he was disciplined for a dress code violation, only that "[it was his] belief that had [he] not dressed according to code [he] would not have been allowed to work." *See Plaintiff's Complaint* (doc. #1). Mr. Wiggins asserts no tangible injury here, only a speculative one: *if* he had violated the dress code he *might* have been disciplined. *See Davis*, 245 F.3d at 1239 ("the asserted impact [of the adverse employment action] cannot be speculative and must have at least a tangible adverse effect on the plaintiff's employment"). All employees during the 2003 season were informed about the dress code, and Mr. Wiggins was at no time reprimanded for any violations of the dress code. [M. J. Riley Aff. ¶¶ 5, 14]. Mr. Wiggins makes no further allegation that white employees were allowed to violate the dress code. Therefore, the court does not consider this particular allegation of significance in determining whether Mr. Wiggins suffered an adverse employment action. In the alternative, if this allegation were determinative, the court would have to find that there is no evidence of disparate treatment as regards the dress code.

In light of the evidence before the court, the court cannot conclude that Mr. Wiggins suffered from an adverse employment action. Mr. Wiggins did not qualify for wages of $7.50 per hour, did not qualify for a bonus on the one day he worked after the bonus policy had taken effect, and adhered to the dress code that all bell ringers were subject to. Mr. Wiggins's situation was not the result of a "serious and

15

material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239 (emphasis removed). Mr. Wiggins's circumstances are more akin to the "'ordinary tribulations of the workplace'" that Title VII is not designed to protect. *Gupta*, 212 F.3d at 587 (quoting *Anderson*, 181 F.3d at 1178 (additional citation omitted)). Additionally, the court holds that there are no genuine issues of material fact regarding adverse employment actions. Mr. Wiggins's claims are not substantiated by any concrete evidence or witnesses who can support his allegations, whereas Defendants point to reliable statistics and depositions regarding wages, bonuses, and the dress code.

Even if Mr. Wiggins could demonstrate that an adverse employment action was taken against him, he could not meet the fourth element of the *McDonnell Douglas* test, that employees outside of the protected class, but similarly situated, received different treatment. As previously stated, the statistics provided for the 2003 bell ringing season clearly indicate that a greater number of black employees than white employees were hired, received the $7.50 per hour wages, and received bonuses. *See* [M. J. Riley Aff., ¶¶ 11-12, Ex. A-B]. Similarly situated members outside of Mr. Wiggins's protected class were similarly treated; white employees who had not worked during the 2002 season also received only $7.00 per hour and no employee who raised under $250.00 received a bonus during the time the bonus policy was in

16

effect.   There was no disparate treatment regarding the bell ringer dress code.

Therefore, as no employees outside of the protected class but similarly situated were

treated differently, Mr. Wiggins also fails to meet this element of the *McDonnell*

*Douglas* test.   There are also no genuine issues of material fact on this point, as Mr.

Wiggins cannot point to similarly situated non-class members who were treated

differently.

Mr. Wiggins cannot meet the elements of a prima facie case of discrimination;

therefore, the Defendants are entitled to summary judgment.   Even assuming,

however, that Mr. Wiggins was able to meet the elements of his prima facie case, the

claim would not survive.   Once Mr. Wiggins proves a prima facie case, "the burden

of production shifts to the employer to articulate a legitimate, nondiscriminatory

reason for its actions."  *Wilson*, 376 F.3d at 1087.  If Defendants are able to provide

such reasons, the burden shifts back to Mr. Wiggins "to offer evidence that the

alleged reason of the employer is a pretext for illegal discrimination."  *Id.*   In the

instant case, Defendants have met their burden of offering legitimate, non-

discriminatory reasons for their actions.  In terms of the differences in wages among

employees, the Salvation Army offers that only employees who worked in the 2002

bell ringing season were eligible for $7.50 per hour in wages in 2003; Mr. Wiggins

was not a bell ringer in 2002 and was therefore only eligible for $7.00 per hour in

wages. *See Plaintiff's Complaint* (doc. #1) (stating that he was not a bell ringer in 2002); [M. J. Riley Aff. ¶¶ 3, 4, 11; Ex. A] (noting that Mr. Wiggins did not work in 2002, that the difference in wages was explained to him, that only 2002 bell ringers were paid $7.50 per hour in 2003, and providing a list of 2003 bell ringers, their ethnicity, and their wages); [Cathy Riley Aff. ¶ 5] (stating that she personally explained the difference in wages to Mr. Wiggins). There is no evidence, either direct or circumstantial, to indicate that the Salvation Army's reason for paying employees different wages was motivated by illegal discrimination.  To the contrary, the statistics provided by Defendants indicate that the majority of 2003 bell ringers who received $7.50 in wages were black. [M. J. Riley Aff. Ex. A].  The evidence provided substantiates Defendants' claim that the difference in wages was based solely on previous work experience, a legitimate reason to pay employees different amounts of money.

As to the payment of bonuses for the 2003 season, Defendants assert that no bonus policy was in place until December 8, 2003. [M. J. Riley Aff. ¶ 8].  This policy was set by the Salvation Army and was not discriminatory; *no* employees received bonuses until the policy was in place.  Once implemented, the policy was such that a bell ringer had to raise $250.00 on a given day before bonuses were awarded.  [M. J. Riley Aff. ¶ 8].  Mr. Wiggins only worked as a bell ringer on four days: November

18

26, 28, 29, and December 16, 2003. *Plaintiff's Complaint* (doc. #1); [M. J. Riley Aff. ¶¶ 6, 9]. On the first three days Mr. Wiggins worked, the bonus policy was not in effect; therefore, he could not receive a bonus on those days and the policy was not applied retroactively. Mr. Wiggins only worked on one day after the policy was in effect, December 16, 2003, and on that day he only raised $227.80. [M. J. Riley Aff. ¶ 9]; *Defendant's Motion* (doc. #15), Ex. 4 (Daily Kettle Sheet for December 16, 2003). The amount raised by Mr. Wiggins on December 16, 2003, was not sufficient to qualify for a bonus. Defendants have also provided statistics that indicate that a majority of the employees receiving bonuses (after they became available) were black employees; there is no evidence of discrimination in Mr. Wiggins not receiving a bonus. [M. J. Riley Aff., Ex. B].

As stated above, this court is not compelled to address Mr. Wiggins's argument regarding the dress code, as the alleged injury is speculative in nature. Suffice it to say that the Salvation Army required all its employees to adhere to the dress code; Mr. Wiggins was never reprimanded or punished for any violation of same. [M. J. Riley Aff. ¶¶ 5, 14].

At this juncture, the Defendants have proffered reasonable explanations for the alleged discrimination, and this court finds that these reasons are sufficient to meet their burden. The burden shifts, therefore, back to Mr. Wiggins to offer evidence that

Defendants' reasons are nothing but a pretext for discrimination.  Mr. Wiggins cannot, however, meet this burden.  Mr. Wiggins's complaint offers no explanations for the alleged discrimination and does not counter any of the reasons offered by the Defendants for the differences in wages and bonus policies in effect for 2003.  Mr. Wiggins offers no evidence, direct or circumstantial, that the Salvation Army used their bell ringing policies as a pretext to discriminate against Mr. Wiggins. Furthermore, this court can find no evidence or reason to believe that the proffered reasons are mere pretext.  The evidence offered by the Salvation Army, in the form of testimony and statistics, supports the explanations for their actions in the 2003 bell ringing season.  There are no genuine issues of material fact as regards Defendants' reasons for their policies, as Mr. Wiggins has offered no other explanation (other than the alleged discrimination) for the 2003 bell ringing wages, bonuses, and dress code.

## Conclusion

In sum, Mr. Wiggins cannot meet his burden of proving a prima facie case of discrimination.  In the alternative, even if Mr. Wiggins could meet this burden, Defendants have offered legitimate, non-discriminatory reasons for their actions that have not and cannot be countered by Mr. Wiggins.  Furthermore, there are no genuine issues of material fact as regard these points.  Therefore, this court finds that

Defendants' motion for summary judgment (doc. #15) should be **GRANTED**.  A separate order will be entered.

      **DONE** this the 13th day of April, 2006.

 

**VIRGINIA EMERSON HOPKINS**
United States District Judge